UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES A. MILLER, | 1:12-cv-00353-DAD-EPG-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ONLY FOR DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AGAINST DEFENDANTS MEDINA, CHUDY AND FREDERICHS, AS WELL AS VIOLATION OF THE BANE ACT AGAINST DEFENDANT MEDINA; AND FOR RETALIATION AND B9ANE ACT AGAINST DEFENDANTS EDDINGS AND WALKER; AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED FROM THIS ACTION |
| vs. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | |
| Defendants. | |
| | (ECF No. 49) |
| | THIRY DAY DEADLINE |

## I.      BACKGROUND

Charles A. Miller ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.

This action was initiated by civil complaint filed by Plaintiff in the Fresno County Superior Court on June 15, 2010 (Case #10CECG02100). On March 8, 2012, defendants Adonis, Griffith, Gutierrez, Igbinosa, Medina, and Mendez removed the case to federal court and requested the court to screen the complaint under 28 U.S.C. § 1915A. (ECF Nos. 1, 2.) On

March 8, 2012, defendants California Department of Corrections and Rehabilitation ("CDCR"), Ahmed, Anderson, Chudy, Duenas, Eddings, Pascual, and Walker joined in the Notice of Removal of Action. (ECF No. 4.) On October 4, 2012, the Court[1] granted Defendants' motion for the court to screen the complaint. (ECF No. 16.)

On October 17, 2013, the Court dismissed the Complaint for violation of Rule 8(a) of the Federal Rules of Civil Procedure, with leave to amend. (ECF No. 32.) On December 2, 2013, Plaintiff filed the First Amended Complaint. (ECF No. 35.) On June 19, 2014, the Court issued an order striking the First Amended Complaint for Plaintiff's failure to comply with the court's order of October 17, 2013. (ECF No. 40.) Plaintiff was granted leave to file a Second Amended Complaint. (Id.) On August 13, 2014, Plaintiff filed the Second Amended Complaint. (ECF No. 44.)  The Court screened the Second Amended complaint on June 29, 2015.  (ECF No. 46)  The Court found that Plaintiff's Second Amended Complaint stated a cognizable Eighth Amendment medical claim against defendant Officer M. Medina for not allowing him to sit down instead of standing, but found that the Second Amended Complaint failed to state any other claims.  (ECF No. 46).  The Court gave Plaintiff a choice of going forward on that one claim or further amending his complaint.

On July 10, 2015, Plaintiff filed a motion for reconsideration, asking for District Court to conduct a *de novo* review and arguing that the Magistrate Judge erred in dismissing all but one claim (with leave to amend).  (ECF No. 47)  On July 16, 2015, District Judge Lawrence J. O'Neill denied Plaintiff's motion for reconsideration.  (ECF No. 47)

Plaintiff filed a Third Amended Complaint on July 31, 2015.  (ECF No. 49)  The Court screened Plaintiff's Third Amended Complaint and found that it stated cognizable claims for against Defendants Medina, Chudy and Frederichs for Deliberate Indifference to Serious Medical Needs in violation of the Eighth Amendment, as well as for violation of Government Code § 845.6.  The Court found that the Third Amended Complaint also stated a related Bane Act claim against Defendant Medina.  The Court also found that it stated cognizable claims

---

[1] All Magistrate Judge orders before October 12, 2015 were issued by Magistrate Judge Gary S. Austin.

against Defendants Eddings and Walker for Retaliation in violation of the First Amendment, as well as for violation of the Bane Act.  The Court gave Plaintiff the choice of proceeding only on the claims found cognizable by the Court, or indicating that he does not agree to proceed only on those claims, subject to findings and recommendations consistent with the Court's order.

On October 5, 2016, Plaintiff notified the Court that he wished to proceed on the claims found cognizable "so long as plaintiff's doing do [sic] is not, and will not be, construed in anyway as an expressed, or implied, waiver, forfeiture, [sic] abandonment or consent to involuntary dismissal, of the remaining claims."   (ECF No. 61, emphasis in original).  Plaintiff indicated that he reserved his right to de novo review before the District Court.

Accordingly, the Court submits the following findings and recommendations to the District Court,[2] to permit certain claims and defendants to go forward, and others to be dismissed with prejudice, as described below.

## II.       SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.   28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

---

[2] The Court earlier issued Findings and Recommendations on October 13, 2016.  (ECF No. 62) After reviewing Plaintiff's objections, (ECF No. 64), the Court vacated the earlier Findings and Recommendations in order to correct an error in the conclusion as well as to make some additional amendments addressing Plaintiff's objections.  (ECF No. 65).

conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, Courts "are not required to indulge unwarranted inferences." <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Iqbal</u>, 556 U.S. at 678-79; <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  <u>Id.</u>  The mere possibility of misconduct falls short of meeting this plausibility standard.  <u>Id.</u>

### III.    SUMMARY OF THIRD AMENDED COMPLAINT

Plaintiff's Third Amended Complaint (TAC) is brought against 20 named defendants: Defendants M. Adonis, the CDCR, Felix Igbinosa, B. Baxter, Susan Rido, Melissa Griffith, G. Mendez, Etta Brown, Angelica Duenas, B. Howerton, E. Eddings, A. Walker, A. Gutierrez, Joseph Chody, J. Anderson, Tim Frederichs, Z. Ahmed, Y. Olivas, L. Fernandez, M. Medina. Additionally, Plaintiff includes "various unidentified DOE persons whose identities plaintiff does not currently know who joined in, or participated knowingly in, a retaliatory [sic] transfer of plaintiff from PVSP to CTF-Soledad."

Plaintiff alleges that, in late March 2009, Plaintiff developed a kidney stone condition that required him to be hospitalized.  On March 31, 2009, while hospitalized at Community Regional Medical Center (CRMC), a doctor named Christina Hernandez ordered x-rays of Plaintiff's right knee.  Those x-rays did not reveal evidence of a fracture, dislocation, or bone density abnormality.  Dr. Hernandez then ordered Plaintiff to be seen by an orthopedic specialist and physical therapist.  She also ordered that Plaintiff's knee be immobilized.

On April 3, 2009, Plaintiff was seen by Orthopedic P.A. Antonio Rubio as well as Physical Therapist Katie Clark.  When Plaintiff was discharged, Dr. Hernandez issued the following treatment order: "Mr. Miller has an appointment c [sic] our ortho clinic on 4-19-09 at 8:45 am and an MRI as an outpt on June 5 at 1:00 pm here at Fresno Comm. Hospt."

Plaintiff alleges that Dr. Hernandez's orders were made known to Defendants Igbinosa,

Rido, and Baxter in writing and telephonically on April 3, 2009.  Defendant Igbinosa was responsible for all healthcare services and policies at PVSP.  He had an obligation to properly train and supervise subordinates on how to fill out and submit for approval the "Physician Request for Service" ("RFS") forms, and had a duty to timely and promptly respond to 602 grievances, yet failed to do so. Plaintiff alleges that Defendant Igbinosa's failure to train subordinate defendants was a moving force behind the delay in examination.

Defendant Rido chose not to leave her home to come out to the PVSP prison and personally examine Plaintiff's knee injuries as the "duty physician" should have done. Defendant Rido failed to do an RFS form herself, nor direct and train Defendant Baxter to do one. Plaintiff alleges that Defendant Rido, as an off-site physician, was insufficiently trained to do an RFS and did not want to be responsible for follow-up treatment.

Defendant Rido authorized Defendant Baxter to write a physician's order on CDC-7221 and CDC-7230 forms.  Baxter did so and noted the need for an orthopedic specialist examination on 4/19/09.  Defendant Baxter also prepared a physician's order on April 3, 2009, which caused Plaintiff to be issued a wheelchair, walker, cane and knee brace, upon his return to PVSP, as well as Motrin for pain.  But Defendant Baxter refused to summon Defendant Rido to physically examine plaintiff's knee.

Together, Defendants Igbinosa, Rido and Baxter's failure to take the necessary steps to get Plaintiff the physician ordered orthopedic specialist examination resulted in a delay from the April 19, 2009 planned examination date through May 29, 2009, when Plaintiff finally obtained a CT Scan.  Plaintiff received the CT scan on May 29, 2009 because he filed a CDCR-602 grievance, which was partially granted.

The CT scan that took place on May 29, 2009 was read on June 5, 2009.  It revealed fractures of the distal femur, proximal tibia, anterior subluxation, meniscus tears, bone density loss, and hypertrophic changes.  Plaintiff alleges that such issues were due to improper healing caused by the Defendants' delay in providing adequate medical care after his fall on March 31, 2009.

On August 4, 2009, Plaintiff received an orthopedic specialist examination from Dr.

Marshall S. Lewis.  Arthroscopic surgery was recommended to repair the medial/lateral mensici [sic], perform a partial menisectomy/synovectomy, but not to effect primary cruciate ligament repairs due to the permanent nature of their damage.  Plaintiff alleges that the four month delay in seeing an orthopedic specialist caused improper healing.

Defendants Brown and Duenas were complicit in these delays due to their inadequate responses to Plaintiff's 602 grievances.  Defendant Dr. Duenas and Physician's Assistant Brown were in a position to resolve the delay and had authority to do a proper RFS, but did nothing until September 3, 2009, when they partially granted and partially denied Plaintiff's 602 because Plaintiff had seen Dr. Lewis and was pending transfer out of PVSP.

Defendant Griffith saw Plaintiff on April 23, 2009 in response to CDC-7362 that Miller submitted, and Defendant Griffith noted Plaintiff's inability to walk on his right knee at the time.  Defendant Griffith knew of Plaintiff's mobility impairment and the physician orders that Plaintiff use a wheelchair, walker, cane and knee brace to get around PVSP.  But none of the Defendants told Plaintiff to cease using his right knee/leg for sufficient time to let it heal.

On June 23, 2009, Dr. Menagral told Plaintiff about the results of his CT Scan and renewed the comprehensive accommodation chrono for use of the wheelchair, walker, cane and knee brace pending the orthopedic specialist examination.

At some unidentified point in time, Plaintiff alleges that Defendants Griffith, Walker, Eddings, and others who are unknown but were employed at PVSP in 2009, entered into a meeting of the minds, plan or agreement to transfer Plaintiff out of PVSP in retaliation for Plaintiff having assisted a fellow state prisoner, Arthur Semendinger, in his separate lawsuit against Defendant Griffith and others.  On June 24, 2009, Defendants Walker, Eddings and other Doe defendants held a meeting in which Plaintiff appeared in a wheelchair and was informed that he was being transferred to another prison as a result of Plaintiff assisting inmate Semendinger in his lawsuit against Mills, May, and Griffith.  Plaintiff objected to this transfer on the basis that the prison under consideration for transfer, Ironwood State Prison, was not a wheelchair compatible facility.  Defendant Eddings told Plaintiff: "Your need for a wheelchair, or other medical needs, is not our main concern or problem.  Its [sic] a medical problem that is

between you and the medical department . . . . Your [sic] here for transfer consideration to ISP because you put together an affidavit that was filed in another inmate's lawsuit against Sergeant May, and Lieutenant Mills, that caused the Court to rule against them during a recent hearing, and we feel you need to be transferred out of this institution [PVSP] for your own good as well as theirs." Defendant Walker stated "you wouldn't be having this problem if you would slow your roll when it comes to helping other prisoners with their litigation. We don't have a problem when your [sic] doing your own legal work, but helping other inmates with claims against my facility supervisors means you, or they, need to go." Defendant Walker also explained to Plaintiff "We don't care what your medical problems are, or anything about your medical concerns, were [sic] here to transfer you because your [sic] a security problem from our way of seeing things. You can't expect to stay at this prison very long, or any other one for that matter, to get your medical needs handled property, if all you want to do is instigate other inmates to litigate claims against our staff." The participants in that meeting all chilled Plaintiff's willingness to help other prisoners with litigation, or be a witness for another inmate unless the litigation involves himself as a party to the action.

Defendants' attempt to transfer Plaintiff to ISP was ultimately unsuccessful because the transportation sergeant refused to transport Plaintiff in a wheelchair to ISP.

Following the meetings and unsuccessful attempt to transfer Plaintiff to ISP, Plaintiff resumed helping inmate Semedinger prepare briefs in his case. The court ruled in favor of Mr. Semedinger at the hearing resulting from the briefs prepared by Plaintiff. Defendant Eddings overheard these court proceedings.

After the court hearing, Defendant Eddings summoned Plaintiff to his office at PVSP and told Plaintiff he was being transferred to CIF-Soledad because "You just don't seem to get it. So long as you persist in helping Semendinger with his lawsuit against staff, your[sic] going to be the one who suffers the consequences, not him." When Plaintiff objected that transfer would interfere with his knee surgery, Defendant Eddings told Plaintiff "The Warden, and litigation office, don't care about your surgery. They just want you out of here, like the rest of us."

Plaintiff was transferred to CIF-Soledad on September 24, 2009.

Before his transfer, Dr. I. Paja issued a Comprehensive Accommodation Chrono, physician's order, which ordered that Plaintiff be provided with a cane, knee brace, walker and wheelchair for six months. This was approved by Defendant Igbinosa and the PVSP "Mar Committee." It should have been effective until March 16, 2010.

On September 21, 2009, Plaintiff was summoned to the PVSP medical clinic and Defendants Mendez, Adonis, Griffith, Gutierrez, and Duenas told Plaintiff to turn in the wheelchair, walker, knee brace and cane to them for purpose of being transferred to CIF-Soledad on September 24, 2009 so that CDCR transportation staff would take Plaintiff on the bus, unlike last time. Plaintiff was told he could have these appliances at CIF-Soledad. Plaintiff told these defendants that he could not walk more than 50 feet without his knee giving out. Defendant Adonis gave Plaintiff a receipt for the wheelchair. However, no wheelchair was reissued to him at CIF-Soledad upon his arrival.

In his last days at PVSP, Plaintiff was returned to his cell without his appliances and was put on a modified "confined to quarter" status pending transfer. He still had to move or walk about in pain at times.

Before that transfer, Defendant Howerton intentionally fabricated the medical record to state that Plaintiff was refusing surgery and wanted to transfer. This fabrication further delayed Plaintiff's knee surgery.

The next day, Defendants Griffith, Mendez, and Gutierrez approached Plaintiff with a CDCR-7225 form for "Refusal of Examination and/or Treatment" that had been filled out for Plaintiff to sign. Instead of endorsing it, Plaintiff wrote "I want my surgery and am not refusing it at all." Defendants Mendez, Griffith and Gutierrez told Plaintiff that he would be transferred to CIF-North on September 24, 2009 "if you sign the CDC-7225 form or not, and if you do not sign the form stating that you consent to have your surgery continued at the new prison, you will probably never receive the surgery at CIF because they will consider your refusal to sign as a refusal of the treatment altogether." Plaintiff then wrote on the form "I want my surgery but also want to transfer out on schedule. Would like to continue the surgery at my

next institution." Defendants Griffith and Mendez assured Plaintiff again that upon his arrival at CIF-Soledad, he would be provided with a knee brace, wheelchair, and/or walker, pending knee surgery.

Plaintiff alleges that defendants knew or reasonably should have known that he would not be provided with a wheelchair, walker and knee brace at CIF-Soledad after his transfer to that institution because it was not a CDCR institution that accommodated ADA disabled persons.

On September 24, 2009, Plaintiff was transferred from PVSP to CIF-Soledad without a lift as had been ordered by Dr. Paja and approved by Defendant Igbinosa and the PVSP MAR Committee.

Upon arrival at CIF- Soledad, R. Pascual told Plaintiff that CIF "does not accommodate wheelchair bound" prisoners and that no knee brace, wheelchair or walker was available for him. Plaintiff was given a cane.

Plaintiff alleges that Defendant Chudy, the CIF Chief Medical Officer, and Defendant Frederichs, the CIF Chief Physician and Surgeon, as of September 24, 2009 were responsible for promulgating the policy of not providing prisoners in need of wheelchairs, walkers and knee braces any appliances regardless of their medical needs.

Plaintiff filed multiple grievances at CIF-Soledad requesting medical care and treatment. In the meantime, Plaintiff was walking on his right knee only using a cane for support for another 5 to 6 weeks.

Plaintiff saw a CIF physician, Defendant Ahmed, on November 25, 2009. Defendant Ahmed told Plaintiff he could not order him a wheelchair or walker because "CIF has an unwritten policy to the effect that we cannot accommodate prisoner's [sic] with wheelchair, or walker, needs." Defendant Ahmed further explained "it doesn't matter if you need a wheelchair, walker, or other orthopedic appliance in order to walk, you won't get one here. You'll need to be transferred someplace else." Plaintiff received similar responses to his 602 grievances, where prison officials indicated "CIF does not accommodate wheelchair bound Pt." Defendant Ahmed prescribed MS contin ("morphine") to Plaintiff. Defendant Ahmed also

issued instructions that Plaintiff had a need for a cane, low-bunk, no stair usage, and no bending restrictions.

On January 29, 2010, Plaintiff met with an orthopedic specialist/surgeon named Dr. Donald Pompan, who recommended Plaintiff for arthroscopic surgery. Dr. Pompan notes that Plaintiff should be provided with a wheelchair and/or walker "if" or "when" needed. Nevertheless, the prison continued to deny Plaintiff's requests for a wheelchair and walker in 602 grievances.

On January 31, 2010, Defendant Medina, a prison guard, observed Plaintiff sitting on a wooden bench after the evening meal. The guard asked why Plaintiff was not standing. Plaintiff showed Defendant Medina proof of his medical problem. Nevertheless, Defendant Medina ordered Plaintiff to stand at his door anyway. After Plaintiff filed 602 grievances regarding Defendant Medina's conduct, Medina was told that Plaintiff could be seated in front of his cell when needed. Even after learning of this decision, Defendant Medina again ordered Plaintiff to stand by his cell door while waiting to go to the evening meal. Defendant Medina threatened Plaintiff with disciplinary action if he did not stand, and said that he (Medina) did not have to comply with the directive of his superiors. Plaintiff did as ordered but reinjured his menisci and suffered excruciating pain as a result.

Plaintiff brings the following claims: cruel and unusual punishment in violation of the Eighth Amendment, retaliatory transfer in violation of the First Amendment, interference with civil rights in violation of the Bane Act Civil Code § 52.1, negligence in violation of Government Code § 845.6, and professional negligence (medical malpractice).

## IV.      EVALUATION OF PLAINTIFF'S EIGHTH AMENDMENT CLAIM

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.' " Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to

the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs.  McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances...and...that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

The Court finds that Plaintiff's TAC states an Eighth Amendment claim for deliberate indifference to serious medical needs against Defendant Medina.  Plaintiff alleges that Defendant Medina was aware of Plaintiff's medical needs and disregarded them by ordering Plaintiff to stand on his injured knee and that Plaintiff suffered injury as a result.

The Court also finds that Plaintiff's TAC states a cognizable claim against Defendant Chudy, the CIF Chief Medical Officer, and Defendant Frederichs, the CIF Chief Physician and

Surgeon, for promulgating the policy of not providing prisoners in need of wheelchairs, walkers and knee braces any appliances despite need.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77, 129 S.Ct. at 1949; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Liability may not be imposed on supervisory personnel under the theory of respondeat superior, Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934, and supervisory personnel may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

That said, supervisors can be held directly liable under certain narrow circumstances. As the Ninth Circuit explained:

> We have long permitted plaintiffs to hold supervisors individually liable in §
> 1983 suits when culpable action, or inaction, is directly attributed to them. We
> have never required a plaintiff to allege that a supervisor was physically present
> when the injury occurred. In *Larez v. City of Los Angeles,* 946 F.2d 630 (9th
> Cir.1991), we explained that to be held liable, the supervisor need not be
> "directly and personally involved in the same way as are the individual officers
> who are on the scene inflicting constitutional injury." *Id.* at 645. Rather, the
> supervisor's participation could include his "own culpable action or inaction in
> the training, supervision, or control of his subordinates," "his acquiescence in
> the constitutional deprivations of which the complaint is made," or "conduct that
> showed a reckless or callous indifference to the rights of others." *Id.* at 646
> (internal citations, quotation marks, and alterations omitted).

Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011).   See also Redman v. County of San

<u>Diego</u>, 942 F.2d 1435, 1446–47 (9th Cir. 1991) ("Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." . . . This latter liability is not a form of vicarious liability. Rather, it is direct liability. Under direct liability, plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.").

The Court finds that Plaintiff's TAC satisfies this narrow exception for supervisory liability as to named CIF supervisor defendants, at least at the pleading stage.  The TAC includes specific factual allegations that CIF Soledad has an unconstitutional policy of not accommodating wheelchair bound prisoners at all, regardless of their medical needs.  Plaintiff alleges he was explicitly told this multiple times including by R. Pascual, Dr. Ahmed, and L. Fernandez.  Plaintiff alleges that he had a serious medical need for a wheelchair and supports this claim by factual allegations that medical professionals had prescribed him a wheelchair. Plaintiff also alleges that he was repeatedly denied a wheelchair solely due to an unconstitutional policy at CIF.  He also specifically alleges that Defendants Chudy and Fredericks personally created this policy.  Liberally construed in favor of Plaintiff, as the Court must do at this stage, the Court finds that Plaintiff has alleged that Defendants Chudy and Fredericks are liable for deliberate indifference to medical needs under the Eighth Amendment based on their promulgation and enforcement of an unconstitutional policy at CIF-Soledad.

The Court finds that Plaintiff fails to allege a viable Eighth Amendment claim as to any of the remaining defendants.  The Court has carefully examined Plaintiffs long and frustrating history of trying to get medical care for his knee.  Nevertheless, the Court finds that no other defendant's actions, as alleged, satisfies all the elements of an Eighth Amendment violation. For certain actors, such as those who did not process the correct form for his orthopedic consultation, Plaintiff fails to allege deliberate indifference, i.e. a purposeful act or failure to respond to a prisoner's medical need.  For other actions that do appear to be intentional and

deliberate, such as falsifying a form or coercing a response to the form to make it appear that Plaintiff had waived surgery, it does not appear that such actions caused further injury because Plaintiff continued to insist that he wanted such surgery rather than endorsing the proposed forms.  In other words, Defendants' attempts to deny medical care based on falsification of forms were unsuccessful.  Plaintiff's allegations about prison staff at PVSP removing his appliances before transfer do not establish sufficient deliberate indifference because they allowed him a restricted cell movement status and indicated that he would get his wheelchair at CIF-Soledad, which was a decision outside their control.  In the end, Plaintiff's allegations taken as a whole indicate that PVSP officials allowed Plaintiff to consult doctors, use a wheelchair and other medical appliances, and schedule surgery, albeit later than Plaintiff wished.

As will be discussed below, PVSP's actions occurred in the shadow of a dispute about Plaintiff's legal assistance to another inmate ultimately resulting in his transfer to CIF-Soledad. Plaintiff has not established that the transfer was done intentionally to deprive him of medical care, and indeed Plaintiff alleges that it was done in retaliation for his work on other inmates' legal cases.  The allegations, construed in Plaintiff's favor, establish that persons at CIF-Soledad deprived Plaintiff of his medical appliances due to a policy by the supervisors of the prison, as discussed above.  The Court thus does not find that any of the other defendants' actions at PVSP as alleged rise to the level of a constitutional Eighth Amendment violation.

## V.      EVALUATION OF PLAINTIFF'S RETALIATION CLAIM

Plaintiff next brings a First Amendment retaliation claim against certain PVSP defendants on the basis that they transferred him to another prison in retaliation for Plaintiff's legal assistance to other inmates.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation

entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005); accord <u>Watison v. Carter</u>, 668 F.3d 1108, 1114-15 (9th Cir. 2012); <u>Silva</u>, 658 at 1104; <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff has alleged that prison officials at PVSP transferred him to another institution because of his assistance of another inmate's legal proceedings and that the transfer chilled his willingness to assist other prisoners in their litigation.

The Ninth Circuit addressed the issue of legal assistance to other inmates in <u>Blaisdell v. Frappiea</u>, 729 F.3d 1237, 1242 (9th Cir. 2013), in which the Court affirmed summary judgment dismissing a prisoner's First Amendment retaliation claim where it was based on alleged retaliation for legal assistance to another inmate. <u>Id.</u> at 1247 ("As any alleged retaliation against Blaisdell was not rooted in activity safeguarded by the Constitution, the district court properly awarded summary judgment in favor of Frappiea."). The Court explained that "a claim for retaliation can be based upon the theory that the government imposed a burden on the plaintiff, more generally, 'because he exercise[d] a constitutional right. . . .'". <u>Id.</u> at 1243-44. The Court then discussed each potential constitutional right, and explained why assisting a fellow inmate did not constitute constitutionally protected activity under that right. For example, regarding the "right to litigate without active interference," the Court explained that access-to-courts rights do not exist in an "abstract, freestanding" form. Instead, they are tethered to principles of Article III standing. For there to be a judicially cognizable injury, "the party before [the court] must seek a remedy *for a personal* and tangible harm." Thus, while [the two inmates] each have an access-to-courts right to file litigation from prison, they cannot vicariously assert that protection on each other's behalf." <u>Id.</u> at 1243-44.

That said, the Ninth Circuit in <u>Blaisdell</u> relied on a footnote in the U.S. Supreme Court case of <u>Shaw v. Murphy</u>, 532 U.S. 223 (2001) to find that the right to provide legal advice is a contingent right depending on the legal need of the other inmates. <u>Blaisdell</u>, 729 F.3d at 1245,

citing <u>Shaw</u>, 532 U.S. at 231 n. 3 ("Under our right-of-access precedents, inmates have a right to receive legal advice from other inmates only when it is a necessary means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.") (internal quotations and citations omitted).  The Ninth Circuit noted the following facts in affirming the grant of summary judgment in that case: "CCA's Corporate and Facilities Policy provides for a law library and for contract attorneys or paralegals to help inmates prepare motions to proceed *in forma pauperis,* motions for appointment of counsel, habeas petitions, and § 1983 suits. . . . He also acknowledges that the federal rules furnished Gouveia with potential ways to effectuate service." <u>Id.</u> at 1245.  The Ninth Circuit thus looked to facts not available to the Court at the screening stage regarding the inmate's resources in evaluating, and ultimately upholding dismissal of, the inmate's retaliation claim.

Also relevant to this analysis is the U.S. Supreme Court's holding in <u>Shaw</u> that legal assistance to fellow inmates was not entitled to an elevated level of protection—but nevertheless was entitled to some protection:

> Finally, even if we were to consider giving special protection to particular kinds of speech based upon content, we would not do so for speech that includes legal advice.  Augmenting First Amendment protection for inmate legal advice would undermine prison officials' ability to address the "complex and intractable" problems of prison administration.  Although supervised inmate legal assistance programs may serve valuable ends, it is "indisputable" that inmate law clerks "are sometimes a menace to prison discipline" and that prisoners have an "acknowledged propensity ... to abuse both the giving and the seeking of [legal] assistance."  . . . We thus decline to cloak the provision of legal assistance with any First Amendment protection above and beyond the protection normally accorded prisoners' speech.  Instead, the proper constitutional test is the one we set forth in *Turner.* Irrespective of whether the correspondence contains legal advice, the constitutional analysis is the same.

<u>Shaw</u>, 532 U.S. at 231–32.

With these legal standards in mind, the Court has doubts about whether Plaintiff's retaliation claim will ultimately survive.  The Court also questions whether Defendants would be entitled to qualified immunity given the legal precedent on this issue.  Nevertheless, this Court recommends that this claim proceed past the screening stage so that the Court can

evaluate it with a more fully developed record and input from Defendants regarding the basis for the transfer, the ability of the inmates to receive legal assistance from other means, and any security issues involved.[3]

Accordingly, the Court finds that Plaintiff states a claim for retaliation under the First Amendment against Defendants Eddings and Walker.

## VI.    EVALUATION OF PLAINTIFF'S STATE LAW CLAIMS

Plaintiff also brings the following claims under state law: interference with civil rights actionable under Bane Act. Civil Code § 52.1, statutory negligence under Government Code § 845.6, and Professional Negligence/Medical Malpractice.

The Court does not have jurisdiction over state law claims, unless subject to the Court's supplemental jurisdiction.  Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," with specific exceptions. "Pendent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a 'common nucleus of operative fact between the state and federal claims.'"  Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) (quoting Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir.1991)).  "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary."  Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."  United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

In this instance, the Court has found a cognizable federal section 1983 for deliberate

---

[3] The Court notes that the underlying district court in Blaisdell allowed the retaliation claim to go forward at the screening stage and then granted summary judgment against the inmate based on a more fully developed record.  Blaisdell, 729 F.3d at 1241 ("The court's screening order, while expressing the view that Blaisdell's service of process was not an actionable basis for a retaliation claim, did not definitively screen that allegation. Instead, the order simply directed Frappiea to file an answer as to Count One.").

indifference to serious medical needs under the Eighth Amendment against Defendant Medina, Defendant Chudy, and Defendant Frederichs.  The Court has also found a cognizable federal section 1983 for retaliation under the First Amendment against Defendants Eddings and Walker.  The Court will examine the three state law claims as to these same defendants to determine whether supplemental jurisdiction would be appropriate under these legal standards.[4]

### A.  BANE ACT

California's Bane Act, Civil Code § 52.1, provides:

> (a) If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. . . .

> (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action . . . to eliminate a pattern or practice of conduct as described in subdivision (a).

Cal. Civ. Code, § 52.1.  "The essence of such a claim is that 'the defendant, by the specified improper means ... tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or force the plaintiff to do something he or she was not required to do.' " <u>Boarman v. Cnty. of Sacramento</u>, 55 F. Supp. 3d 1271, 1287 (E.D. Cal. 2014) (quoting

---

[4] Plaintiff claims that dismissal of any state law claims would be unfair because he filed this case in Fresno Superior Court, and the defendants chose to remove this action to federal court, thereby invoking supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.  Plaintiff further claims that remand of the case to Fresno Superior Court is appropriate to address statute of limitations concerns over any dismissed state law claims.  The Court disagrees.  Plaintiff filed a complaint in Fresno Superior Court that was properly removable to federal court because it contained claims for which federal subject matter jurisdiction existed under 28 U.S.C. § 1331.  Plaintiff has presented no basis as to why such removal was inappropriate.  Further, the statute of limitations for any state law claims dismissed in this case is tolled during the time the claims were pending in this case and for 30 days after they are dismissed. *See* 28 U.S.C. § 1367(d).

Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 883 (2007)). The key element in Bane Act cases is "the element of threat, intimidation, or coercion." Shoyoye v. Cnty. of L.A., 203 Cal. App. 4th 947, 959 (2012). "The act of interference with a constitutional right must itself be deliberate or spiteful." Id. "The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention [or other tort] itself." Id.

The Court finds that the Bane Act claim against Defendants Eddings and Walker is sufficiently related to the retaliation claim against those same defendants to confer federal jurisdiction, as there is a common nucleus of operative fact between the state and federal claims.  Plaintiff has alleged a colorable claim against Defendants Eddings and Walker that some coercion was involved in order to deter exercise of a constitutional right.  The same is true of Plaintiff's Bane Act claim against Defendant Medina, where Plaintiff has alleged coercive conduct by Defendant Medina that arguably was meant to deter Plaintiff's right to be free from cruel and unusual punishment, and that Bane Act claim is substantially related to the Eighth Amendment claim the Court has found cognizable against Defendant Medina.  In contrast, Plaintiff has not alleged any arguably coercive acts by Defendant Chudy and Defendant Frederichs so the TAC fails to state a Bane Act claim against them even though Plaintiff's allegations under this cause of action are related to Plaintiff's constitutional claim.

The Court thus recommends exercising supplemental jurisdiction over Plaintiff's Bane Act claims against Defendants Eddings, Walker, and Medina, but no other defendants. Although Plaintiff has alleged Bane Act claims against other defendants, the Court recommends declining to exercise jurisdiction over those state law claims because there is not a pending federal claim against the CDCR or other defendants that is substantially related to the Bane act claim.  Thus, the Court does not find a sufficiently related colorable Bane Act claim against any other defendants to warrant exercising supplemental jurisdiction over them.

**B.  STATUTORY NEGLIGENCE UNDER GOVERNMENT CODE § 845.6**

California Government Code § 845.6 provides (with certain exceptions) that "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need

of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov. Code § 845.6.

The Court recommends against exercising supplemental jurisdiction as to any § 845.6 claim.[5] In Plaintiff's response to the Court's screening order, he specifically objects to the dismissal of the Government Code § 845.6 claim against the CDCR. (ECF No. 61, p.3) The Court recommends declining to exercise supplemental jurisdiction over such a claim. The Court has not found a cognizable federal claim against the CDCR. Moreover, Plaintiff's Government Code claim against the CDCR relates to the failure to promptly provide medical care at PVSP, which the Court has found does not state a claim against the individual defendants. Thus, the Government Code § 845.6 claim against CDCR is not related in subject matter to a cognizable federal claims against an individual, as recommended by this order.

## C. PROFESSIONAL NEGLIGENCE/MEDICAL MALPRACTICE

To show medical malpractice under California law, a plaintiff must establish: " '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' " Hanson v. Grode, 76 Cal.App.4th 601, 606, 90 Cal.Rptr.2d 396 (1999) (quoting Gami v. Mullikin Medical Center, 18 Cal.App.4th 870, 877, 22 Cal.Rptr.2d 819 (1993)).

The Court does not find that the medical malpractice claims are sufficiently related to any of the federal claims the Court recommends going forward. The Court has not found that Plaintiff has stated a federal constitutional claim against any medical professional. Accordingly, the Court recommends declining to exercise jurisdiction over any claims for

---

[5] In an earlier version of these Findings and Recommendations, which was subsequently vacated by order, the Court found Section 845.6 claims against Defendants Medina, Chudy, and Frederichs and recommended exercising supplemental jurisdiction over the Section 845.6 claims. (ECF No. 62.) However, Plaintiff objected to this finding, indicating that he never intended to assert Section 845.6 claims against Defendants Medina, Chudy, and Frederichs. (ECF No. 64 at 11-12.) Due to this concession, the Court modifies its recommendations to exclude the recommendations concerning exercising supplemental jurisdiction over the Section 845.6 claims against Defendants Medina, Chudy, and Frederichs.

professional negligence under California law as to any defendant.

## VII.    CONCLUSION AND ORDER

The Court has screened Plaintiff's Third Amended Complaint and finds that it states cognizable claims against Defendants Medina, Chudy and Frederichs for Deliberate Indifference to Serious Medical Needs in violation of the Eighth Amendment, as well as for violation of Government Code § 845.6.  The Court also finds a colorable claim under the Bane Act against Defendant Medina that is substantially related to the Eighth Amendment claim. The Court also finds that Plaintiff's Third Amended Complaint states cognizable claims against Defendants Eddings and Walker for Retaliation in violation of the First Amendment, as well as for violation of the Bane Act.  However, the TAC states no other cognizable claims subject to this Court's jurisdiction against any of the other defendants.

Plaintiff has been given multiple chances to amend his complaint with guidance from the Court.  This is Plaintiff's Third Amended complaint.  In Plaintiff's response to the Court's screening order, Plaintiff agreed to proceed on the claims found cognizable, but objected to dismissal of the remaining claims and defendants.  Accordingly, the Court recommends moving forward on the cognizable claims without further leave to amend.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    This action proceed against:

    a.  Defendants Medina, Chudy and Frederichs for Deliberate Indifference to Serious Medical Needs in violation of the Eighth Amendment;

    b.  Defendant Medina under the Bane Act;  and

    c.  Defendants Eddings and Walker for Retaliation in violation of the First Amendment, as well as for violation of the Bane Act.

2.    All remaining claims and defendants be dismissed from this action. Specifically, the Court recommends dismissal of all asserted federal claims, besides those found cognizable, with prejudice.   The Court recommends dismissal of all asserted state claims, besides those found cognizable and subject to supplemental jurisdiction, without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 9, 2017**                   /s/ Erica P. Grosjean
                                         UNITED STATES MAGISTRATE JUDGE